IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PARKWAY 1046, LLC,

    Plaintiff,

v.                                                                              Civil Action No. 2:17cv292

U.S. HOME CORPORATION,

    Defendant.

## OPINION & ORDER

This matter is before the Court following a bench trial held April 17, 2018, at which Plaintiff Parkway 1046, LLC ("Plaintiff" or "Parkway") and Defendant U.S. Home Corporation ("Defendant" or "U.S. Home") presented evidence and argument. After the trial, the Court **FOUND** the Defendant liable to Plaintiff and entered Judgment in the amount of $2,249,999. See Doc. 41. The Court instructed the Parties to submit briefs to the Court on the appropriate measure of interest as well as whether Plaintiff is entitled to attorneys' fees and if so in what amount. The following findings of fact and conclusions of law explain the Court's reasoning as to liability.

### I.     FINDINGS OF FACT

**A.     The Contracts**

On November 15, 2005, Defendant entered into an Agreement of Purchase and Sale of Membership Interests ("Land Transfer Agreement") with Settlers Crossing, LLC ("Settlers Crossing"), a Virginia limited liability company whose sole members are Steven B. Sandler and Arthur B. Sandler ("the Sandler Brothers"), and Washington Park Estates, LLC ("WPE"), a

1

Maryland limited liability company whose sole member was Settlers Crossing. Pl.'s Ex. 1. On the same date, Defendant entered into a Contract for Services ("Development Contract") with Bevard Development Company ("Bevard"), an entity owned 51% by the Sandler Brothers and 49% by Daniel Colton. Pl.'s Ex. 2. Plaintiff is a Virginia limited liability company whose sole members are the Sandler Brothers. Plaintiff is not a signatory to either the Land Transfer Agreement or the Development Contract; however, Plaintiff has brought the instant breach of contract action as a third-party beneficiary under the Development Contract.

At the time of the Land Transfer Agreement, WPE held title to 1,250 acres of land in Prince George's County, Maryland. In the Land Transfer Agreement, Defendant promised to pay Settlers Crossing $160,000,000 for its 100% interest in WPE. Defendant planned to use the land owned by WPE for a large residential development project (the "Project"). In the Development Contract, Defendant promised to pay Bevard a fee of $40,000,000 for Bevard's provision of certain development services related to the Project. Also in the Development Contract, Defendant promised to "reimburs[e] Parkway 1046, LLC for the acquisition costs for the two (2) properties identified on Exhibit A in the approximate amount of $2,249,999 ('Right of Way Acquisition Reimbursement')." Pl.'s Ex. 2 ¶ 4. Defendant promised to pay the Right of Way Acquisition Reimbursement ("Reimbursement") to Plaintiff "at the time of Settlement under the [Land Transfer] Agreement." Id. "Settlement" is defined in the Land Transfer Agreement to mean the "consummation of the purchase and sale" under that Agreement. Pl.'s Ex. 1 ¶ 5. At the time of the Land Transfer Agreement, the Settlement Date was June 30, 2006, and if certain conditions precedent were not satisfied by that date, the Settlement Date would be extended to September 30, 2006.

On December 31, 2005, the parties to the Land Transfer Agreement executed an amendment to that Agreement. The first amendment did not change the definition of Settlement, nor did it change the Settlement Date. On May 16, 2007, the parties executed a second amendment to the Land Transfer Agreement. Among other changes, the second amendment reduced the purchase price from $160,000,000 to $103,000,000, and extended the Settlement Date to December 5, 2007, or, if certain conditions precedent were not satisfied by that date, to March 15, 2009 at the latest. The second amendment also modified Settlers Crossing's remedies in the event of U.S. Home's default, to include "specific performance and injunctive relief against" U.S. Home, which would require U.S. Home "to complete the Settlement in accordance with the [Land Transfer] Agreement and pay the Purchase Price to Settlers Crossing." Pl.'s Ex. 5 ¶ 27. At the same time, the parties to the Development Contract executed an amendment reducing the development fee from $40,000,000 to $26,000,000.

On June 19, 2007, the parties executed a third amendment to the Land Transfer Agreement. On the same date, iStar Financial, Inc. ("iStar") made a $100,000,000 loan to affiliated Sandler entities that was secured by the real estate underlying the Land Transfer Agreement, as well as Settlers Crossing's and Bevard's interests in that Agreement and the Development Contract. The third amendment to the Land Transfer Agreement specified that if iStar foreclosed on the loan, the Land Transfer Agreement would convert from a purchase and sale of membership interest in WPE to a purchase and sale of the underlying property. The third amendment was executed in conjunction with a Consent and Estoppel Agreement. See Pl.'s Ex. 7. The third amendment did not change the definition of Settlement, nor did it extend the Settlement Date.

## B. The Maryland Litigation

The parties to the Land Transfer Agreement did not close. On July 17, 2008, U.S. Home filed suit in the United States District Court for the District of Maryland against Settlers Crossing, WPE, Bevard, Steven B. Sandler, and iStar. U.S. Home v. Settlers Crossing, LLC, et al., No. 8:08-cv-01863. U.S. Home alleged that the sellers had breached the environmental representations and warranties of the Land Transfer Agreement, and that they had materially breached that Agreement by denying U.S. Home access to the property upon request. On June 30, 2009, Settlers Crossing, WPE, Bevard, and iStar filed a joint counterclaim against U.S. Home, asking for a declaratory judgment and specific performance of both the Land Transfer Agreement and Development Contract. See Def.'s Ex. 18. On November 17, 2009, WPE conveyed its interest in the property underlying the Land Transfer Agreement, pursuant to the terms of iStar's loan in event of default. In accordance with the third amendment to the Land Transfer Agreement and the Collateral Estoppel Agreement, iStar also acquired all of WPE's, Settler's Crossing's, and Bevard's interests in the Land Transfer Agreement and Development Contract.

After a two-week bench trial in 2014, the district court concluded that U.S. Home had not met its burden as to its breach-of-contract claims against WPE, Settler's Crossing, and Bevard. See U.S. Home Corp. v. Settlers Crossing, LLC, 33 F. Supp. 3d 596 (D. Md. July 18, 2014). The court further held that iStar was entitled to specific performance, in accordance with the terms of the second amendment to the Land Transfer Agreement, and was also entitled to judgment in its favor with respect to the Development Contract. See id. The district court entered its final judgment on January 22, 2015. See Pl.'s Ex. 19.

4

Pursuant to the district court's final judgment, U.S. Home was declared to be in default of the Land Transfer Agreement "for wrongfully failing to proceed to settlement on May 27, 2008." See Pl.'s Ex. 19 ¶ 2. Accordingly, the district court ordered U.S. Home "to proceed to Settlement within 30 days and pay the amounts due under the terms of the [Land Transfer Agreement] and [Development Contract] and as detailed in the foregoing Memorandum Opinion." Id. ¶ 4. The Fourth Circuit affirmed the district court's ruling on April 12, 2017. U.S. Home Corp. v. Settlers Crossing, L.L.C., 685 F. App'x 173 (4th Cir. Apr. 12, 2017) (unpublished per curiam opinion). On April 21, 2017, U.S. Home satisfied the district court's final judgment, which amounted to the payment of $114 million for breach of the Land Transfer Agreement and the Development Contract, plus interest and real estate taxes, totaling $237,401,901.95. See Pl.'s Ex. 18 at 43–45; Doc. 35 ¶ 35. This entire payment went to iStar, since at the time of the judgment the Sandler-affiliated entities and Bevard had forfeited all of their interests in the Land Transfer Agreement and Development Contract by virtue of their inability to repay the June 19, 2007 loan.

## C. The Right of Way Reimbursement

Turning to the instant litigation, pursuant to the Development Contract, U.S. Home agreed to reimburse Parkway for its acquisition of "the two (2) properties identified on Exhibit A in the approximate amount of $2,249,999 ('Right of Way Acquisition Reimbursement')." Pl.'s Ex. 2 ¶ 4. The Parties stipulated in the Final Pretrial Order to the following relevant facts:

- On or about November 28, 2005, Parkway acquired the parcel located at 9104 Brandywine Road from Yong K. Yoon and Hae Sook Yoon (the "Yoon Parcel"). The deed reflects the consideration was $999,000.00 for the Yoon Parcel.

- On or about January 4, 2006, Parkway acquired the parcel located at 9100 Piscataway Road from Ernest A. Loveless, Jr. and Margaret B. Loveless (the

5

"Loveless Parcel"). The deed reflects the consideration was $1,250,000.00 for the Loveless Parcel.

- The total consideration reflected on the deeds for the Yoon Parcel and the Loveless Parcel was $2,249,000.00.

- The Yoon Parcel and the Loveless Parcel were the properties identified as necessary to secure the right of way improvements for the Project.

- On January 30, 2008, Parkway donated portions of the Yoon Parcel and the Loveless Parcel to the Maryland State Highway Administration. The Deed of Donation covering portions of both the Yoon and Loveless Parcels was accepted by the Clerk and recorded.

- The money used to acquire the Loveless and Yoon Parcels came from an account in the name of S&A Land Development.

Doc. 35 ¶¶ 22–27. To date, there has been no complaint by the State of Maryland or U.S. Home that such donation failed to satisfy the right of way requirements which motivated purchase of the parcels.

On April 27, 2017, Parkway, the Plaintiff, made demand on U.S. Home, the Defendant, for payment of the Right of Way Reimbursement under the Development Contract, in the amount of $2,249,999. See Pl.'s Ex. 23. On May 5, 2017, Defendant acknowledged receipt of Plaintiff's demand and advised that it would respond further once it had fully reviewed Plaintiff's request. See Pl.'s Ex. 24. Defendant made no additional response prior to the filing of this lawsuit on June 5, 2017.

At trial and in other pleadings submitted to the Court, Defendant has contended that the legal descriptions of the properties identified in Exhibit A to the Development Contract do not match the legal descriptions on the deeds for the Yoon and Loveless Parcels, and thus that Parkway did not meet its obligation under that Contract. See, e.g., Doc. 37 ¶ 30. Plaintiff's witness Daniel Colton—part-owner of Bevard—clarified the source of this discrepancy as

regards the Loveless Parcel.[1] At the time the Loveless family purchased the four parcels on pages 2–3 of Exhibit A, the deeds to those parcels stated that the property extended into the middle of the existing roadways. The Loveless family then formally dedicated the portion of its property that consisted of roadway, as well as a portion that would allow widening of the roadway, to the State of Maryland. The description of the Loveless Parcel in Exhibit A came from the original deeds, and thus includes some land that has already been dedicated to the State of Maryland and is no longer owned by the Loveless family. However, as confirmed by Mr. Colton's testimony, the Loveless deed conveys all of the land that was the residue of the Loveless family's original purchase to Plaintiff. Therefore, the property described in Exhibit A consisted of the land that Plaintiff acquired, plus land that was already dedicated to the State and thus fulfilling the right of way requirement.

At trial, Defendant's sole witness, Matthew Wineman, testified that he could not comment on the accuracy of Mr. Colton's testimony. The Court finds this testimony inexplicable, given the fact that Mr. Wineman was involved in drafting the Development Contract as Defendant's attorney back in 2005,[2] and at some point was placed in charge of the Project when he became Vice President of Operations for U.S. Home's Maryland and Delaware operations. Defendant presented no other evidence to contradict Mr. Colton's testimony that the properties identified in Exhibit A are the Yoon and Loveless parcels acquired by Parkway and

---

[1] Mr. Colton testified that he did not believe there had ever been any question or argument that the property described on page 1 of Exhibit A was the Yoon Parcel acquired by Plaintiff. Defendant did not challenge this testimony in any way, and so the Court will accept the fact that the Yoon Parcel is the same property described on page 1 of Exhibit A to the Development Contract.

[2] When Plaintiff called Mr. Wineman, as an adverse witness, the Court brought the issue of attorney-client privilege to counsel's attention. Counsel indicated that he did not expect the scope of his questioning to reach privileged material. Mr. Wineman's testimony regarding his time as Defendant's attorney consisted solely of the facts that he participated in drafting the contracts and amendments at issue and that he was familiar with their contents. When Mr. Wineman was recalled as Defendant's witness, the Court again cautioned defense counsel regarding the potential waiver of attorney-client privilege should Mr. Wineman testify as to services he rendered Defendant as its lawyer. Again, Mr. Wineman's testimony was limited to questions regarding the content of the contracts, which he assisted in drafting, and which had previously been introduced as trial exhibits by Plaintiff. In addition to being the defense's only witness, Mr. Wineman was Defendant's sole corporate representative at trial.

the State of Maryland for right of way purposes. Accordingly, the Court **FINDS** that Parkway fulfilled its obligations under the Development Contract. Additionally, given the relative ease with which Plaintiff was able to show that the several deeds described the same two (2) properties as Exhibit A, the Court **FINDS** that Defendant's contention to the contrary was pretextual.

D.  **"Settlement" Under the Agreement**

Pursuant to the Development Contract, U.S. Home agreed to pay the Right of Way Reimbursement to Parkway "at the time of Settlement under the [Land Transfer] Agreement." Defendant contends that Settlement was to occur on a date certain and did not. Defendant further contends that its compliance with the District of Maryland's final judgment does not constitute Settlement under the Agreement, because what that court ordered did not match with precision the deliverables at Settlement under the Agreement.

Settlement is defined in the Agreement to mean the "consummation of the purchase and sale" under the Agreement. The final judgment in the Maryland litigation directed U.S. Home "to proceed to Settlement within 30 days and pay the amounts due under the terms of the [Agreement]." U.S. Home's compliance with the final judgment clearly constituted the "consummation of the purchase and sale" under the Agreement. Thus, the Court **FINDS** that Settlement under the Agreement occurred on April 21, 2017.

II.  **CONCLUSIONS OF LAW**

Defendant made two (2) arguments at trial for why the Court should not hold it liable to Plaintiff. Defendant first argued that Plaintiff's claim is barred under Maryland's three-year statute of limitations for contract actions. Alternatively, Defendant argues that it is not liable to reimburse Plaintiff for the properties described in Exhibit A, either because Plaintiff did not

actually acquire those properties or because Plaintiff incurred no costs to acquire those properties.

A.  **Statute of Limitations**

The Parties agree and the Development Contract provides that it is to be governed by and construed in accordance with the laws of the State of Maryland. See Pl.'s Ex. 2 ¶ 9. Under Maryland law, the statute of limitations for Plaintiff's breach of contract action is three (3) years. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Ordinarily, in a breach of contract action, the limitations period begins to run from the date the contract was breached. See Kumar v. Dhanda, 198 A.3d 744, 748 (Md. Ct. Spec. App. 2011) (citing Hariri v. Dahne, 412 A.2d 1037 (Md. 2010)). "[T]he primary question [is] whether all the elements of the cause[] of action in question had arisen." Id. Defendant argues that under the Development Contract, U.S. Home's obligation to pay the reimbursement to Parkway came due on the Settlement Date as defined by the Land Transfer Agreement, which according to that Agreement could happen no later than March 30, 2009. See Doc. 37 ¶ 4. Thus, Defendant argues that Plaintiff's claim accrued no later than March 30, 2009, and the instant lawsuit is barred as having been filed more than three (3) years after that date.

Defendant's argument on this point is unpersuasive. The Development Contract requires U.S. Home to make the reimbursement payment to Parkway "at the time of Settlement under the Agreement." Although the "Settlement Date" is a defined term in the Land Transfer Agreement, the Development Contract does not require payment "on the Settlement Date." The Maryland Court found that U.S. Home wrongfully refused to settle, and accordingly ordered it to do so within 30 days of its January 22, 2015 ruling. The Settlement actually took place on April 21, 2017, after an appeals process which ended in affirmation of the Maryland court's ruling by per

curiam opinion. The clear language of the Development Contract requires payment "at the time of Settlement," which the Land Transfer Agreement defines as the "consummation of the purchase and sale" under that Agreement. This Court **FINDS** that Settlement, so defined, occurred on April 21, 2017, at the time that U.S. Home complied with the District of Maryland's final judgment ordering it to "proceed to Settlement . . . and pay the amounts due under the terms of the [Land Transfer Agreement]."

Thus, the Court **FINDS** that Plaintiff's cause of action accrued on April 21, 2017. This finding is supported by Defendant's refusal to settle until ordered to do so by the Maryland Court in the case styled U.S. Home Corp. v. Settlers Crossing, LLC, Civil Action No. DKC 08-1863 (D. Md.), and its apparently pretextual argument in that case that it was not obligated to close because the Sandler-affiliated entities had allegedly breached the Land Transfer Agreement. See id., 33 F. Supp. 3d 596, 628 (D. Md. 2014) ("The evidence demonstrated that, by at least October 1, 2007, [U.S. Home] viewed the Bevard transaction as a financial albatross and actively sought to relieve itself of this burden.").

Moreover, even if Plaintiff's claim had accrued when Defendant contends it did, the Court would exercise its equitable tolling power to allow Plaintiff's claim in this case to move forward. "Although the period of limitations will be borrowed from state law whenever equitable tolling is applied, the question of when that limitations period begins is a matter of federal law." O'Hara v. Kovens, 473 F. Supp. 1161, 1166 (D. Md. 1979) (applying equitable tolling to Maryland statute of limitations). The Fourth Circuit has determined that equitable tolling is appropriate where "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant." Cruz v. Maypa, 773 F.3d 138, 145 (4th Cir. 2014) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). The Maryland

Court found that Defendant in this case wrongfully failed to proceed to Settlement by any of the dates specified in the Land Transfer Agreement. Given Defendant's wrongful conduct, Plaintiff could not have asserted its claim for the Right of Way Reimbursement without also proving that Defendant was obligated to proceed to Settlement under the Land Transfer Agreement. To require Plaintiff to bear such a large burden in order to preserve its relatively much smaller claim would be inequitable. Thus, even if the Court had found that Plaintiff's claim fell outside the limitations period, the Court would have tolled that limitations period until at least April 12, 2017, at which time the Fourth Circuit upheld the Maryland Court's final judgment.

**B.    Liability for Reimbursement**

Under Maryland law, "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001). A third party may sue to enforce a contract if it is an intended beneficiary of the contract. See CR-RSC Tower I, LLC v. RSC Tower I, LLC, 56 A.3d 170, 212 (Md. 2012). To determine whether a third party is an intended beneficiary of the contract, the Court should consider whether the relevant contractual provisions were inserted to benefit the third party, and whether the third party is named in the contract. See id. The Court **FINDS** that Parkway is clearly a third-party beneficiary to the Development Contract, as the provision at issue expressly names Parkway and contemplates a benefit in the form of a payment of approximately $2,249,999 to Parkway.

Defendant argues that it is not in breach of the Development Contract for two reasons. First, Defendant argues that Parkway cannot prove it acquired the properties described in Exhibit A to that Contract. This position apparently is founded solely on the fact that the legal descriptions of the properties in Exhibit A do not precisely match the legal descriptions in the

11

Yoon and Loveless deeds. As the Court detailed in its findings of fact supra, Plaintiff presented credible testimony from Mr. Colton that demonstrates the Yoon and Loveless parcels are in fact the same two properties identified in Exhibit A to the Development Contract, when the portion of the Loveless property previously conveyed to the State of Maryland for right of way purposes is added to the Loveless property described in the deed to Parkway. Defendant offered no evidence to contradict Mr. Colton's testimony, which the Court found credible.

Next, Defendant argues that Parkway did not incur any costs to acquire the properties identified in Exhibit A, and therefore it suffered no loss and is not entitled to "reimbursement." The language of the Development Contract does not specify that Parkway must pay out of pocket the full purchase price for the properties in question; the Contract requires only that Parkway acquire the properties for right of way purposes. The Yoon and Loveless deeds document the conveyance of those properties to Parkway, satisfying Plaintiff's burden on this matter. See Pl.'s Exs. 9, 12. Moreover, at trial, Steven B. Sandler testified that Parkway's acquisition of the Yoon and Loveless parcels was financed by a loan from another Sandler-affiliated entity, S&A Land. The Court **FINDS** Mr. Sandler's testimony credible, evidencing that Plaintiff did in fact suffer a loss to acquire these properties, which merits reimbursement.

For these reasons, the Court **FOUND** that Defendant owed Plaintiff a contractual obligation to reimburse Plaintiff for its acquisition and later conveyance of the Yoon and Loveless parcels in the amount of $2,249,999, and that Defendant breached this obligation by refusing Plaintiff's demand for payment.

C.  **Exhibit E**

At trial, Defendant attempted to make one additional argument regarding an Exhibit E to the Development Contract,[3] which consists of an unexecuted guaranty by Steven B. Sandler for Bevard's monetary obligations under the Contract. Whatever Defendant hoped to obtain by raising this point, the Court will not consider it for two (2) reasons.

First, any claim Defendant wishes to make against Steven B. Sandler regarding Exhibit E to the Development Contract is barred under the doctrine of res judicata. "Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided or could have been decided in an original suit." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161 (4th Cir. 2008) (citing Pueschel v. United States, 369 F.3d 345, 355 (4th Cir. 2004)). A claim is precluded when three conditions are satisfied:

> 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process;
>
> 2) the parties are identical, or in privity, in the two actions; and
>
> 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (citing Kenny v. Quigg, 820 F.2d 665, 669 (4th Cir. 1987)). There is no question that the District of Maryland's judgment was final and on the merits, and that that court was one of competent jurisdiction to enter such judgment. Nor is there any question that Steven B. Sandler, the purported target of this newly raised claim, was also a party to the Maryland litigation.

The question remains, then, whether the claim raised by Defendant here is based upon the same cause of action involved in the Maryland litigation. In the Fourth Circuit, "[t]he test for

---

[3] The record includes Exhibit A, but does not reflect whether there exist any Exhibits B, C, and D to the Development Contract, which apparently included an Exhibit E.

deciding whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Laurel Sand & Gravel, 519 F.3d at 162 (quotation marks omitted) (quoting Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999)). A claim may "arise out of the same transaction" even if that particular claim was not litigated in the prior proceeding. See Pueschel, 369 F.3d at 356 ("Pueschel, however, fails to recognize that the doctrine of res judicata not only bars claims that were actually litigated in a prior proceeding, but also claims that could have been litigated.") (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)); see also Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991) ("Not only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). Defendant's claim is based upon language in the Development Contract, the terms of which were also litigated in the Maryland case. Any rights Defendant may have had under the Development Contract with regard to the guaranty in Exhibit E should have been litigated in that case, and accordingly the Court **FINDS** that its claim regarding that guaranty in this case is barred under the doctrine of res judicata.[4]

The second reason the Court will not entertain Defendant's argument on this point is that Steven B. Sandler is not a party to the instant action. To the extent Defendant wishes to bring a claim against him in his personal capacity, that claim would not be properly before this Court,

---

[4] Although also subjects of the Maryland litigation, the Contract and Exhibit A are key documents in this case. Exhibit E is not a key document in the instant litigation—in fact, Defendant did not even make mention of Exhibit E beyond listing it as an exhibit in the Final Pretrial Order, until submitting its Proposed Findings of Fact and Conclusions of Law to the Court four (4) days before trial. Even then, Defendant only made mention of Exhibit E in a single paragraph in its proposed findings of fact. See Doc. 37 ¶ 17 ("Paragraph 11 of the Contract provides that at Settlement under the Agreement and simultaneously with payment of the development fee under the Contract, Bevard shall cause the guaranty in the form attached as Exhibit E to be executed and delivered to U.S. Home."). Exhibit E did not appear in any of the Factual Contentions or Triable Issues detailed in the Final Pretrial Order.

even if it were not precluded. Moreover, this argument also seems pretextual, given the fact that a guaranty from Mr. Sandler—whose interest in the relevant contracts here were completely extinguished and forfeited to iStar—would not appear to have any real value to Defendant.

### III. CONCLUSION

For the foregoing reasons, the Court **FOUND** Defendant liable to Plaintiff in the amount of $2,249,999. The Court took the issue of interest and attorney's fees **UNDER ADVISEMENT**, pending review of the Parties' submissions on those matters.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
April 26, 2018