**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1556

PARKWAY 1046, LLC,

> Plaintiff - Appellee,

v.

U. S. HOME CORPORATION,

> Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry Coke Morgan, Jr., Senior District Judge. (2:17-cv-00292-HCM-LRL)

Submitted: June 1, 2020                                    Decided: June 3, 2020

Before GREGORY, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Affirmed in part, reversed in part, and vacated and remanded in part by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

David Marroso, Jeffrey Gurrola, John B. Sprangers, O'MELVENY & MYERS LLP, Los Angeles, California; Adam M. Carroll, Carl A. Eason, WOLCOTT RIVERS GATES, Virginia Beach, Virginia, for Appellant. Robert W. McFarland, E. Rebecca Gantt, Norfolk, Virginia, Ashley P. Peterson, MCGUIREWOODS LLP, Richmond, Virginia, for Appellee.

WYNN, Circuit Judge:

In this appeal, Defendant U.S. Home Corporation ("U.S. Home") challenges orders granting judgment, prejudgment interest, and attorneys' fees to Plaintiff Parkway 1046, LLC ("Parkway").

Years ago, U.S. Home entered land purchase and development contracts with others not party to this suit. Under one contract governed by Maryland law, U.S. Home was to reimburse Parkway for certain expenses when the land purchase was finalized, which was expected to happen around 2008. But the matter became ensnared in litigation, and the purchase did not take place until 2017.

Once the purchase was finalized, Parkway sought the reimbursement required by the contract. U.S. Home did not pay, and Parkway filed this action. U.S. Home argues that Parkway's lawsuit is untimely under Maryland's three-year statute of limitations.

The district court held that Parkway's cause of action did not accrue until 2017, and thus this lawsuit—filed that same year—is timely. We agree. However, we conclude that the district court erred in ordering U.S. Home to pay prejudgment interest dating from May 27, 2008 and attorneys' fees. Under Maryland law, Parkway is entitled to prejudgment interest only from the date of the purchase in 2017. And under the contract, Parkway may not be awarded attorneys' fees. Accordingly, we reverse the award of attorneys' fees and vacate and remand with instructions to award prejudgment interest from April 21, 2017.

I.

In 2005, U.S. Home entered a contract to purchase 1,250 acres of land in Maryland ("Purchase Agreement") from a limited liability company solely owned by two brothers

2

(the "Sellers"). The same day, U.S. Home also executed a contract ("Development Contract") with Bevard Development Company ("Bevard Development"), which was to take some steps in developing the land. The Sellers were the majority owners of Bevard Development.

Although not a party to either contract, Parkway—another limited liability company solely owned by the Sellers—classified itself as "a third-party beneficiary" of the Development Contract. J.A. 4.[1] Specifically, under the Development Contract, U.S. Home agreed to pay Parkway approximately $2.25 million "at the time of Settlement under the [Purchase] Agreement" as reimbursement for Parkway's acquisition of certain nearby properties "for right of way purposes" ("Reimbursement"). J.A. 11, 55. The Purchase Agreement defined "Settlement" as "[t]he consummation of the purchase and sale" of the land. J.A. 279; *see also* J.A. 330 (same definition in an amendment to the Purchase Agreement).[2]

The original date of Settlement was to be in June 2006, or September 2006 at the latest. After an amendment in May 2007, the Settlement date was changed to December 2007, or March 2009 at the latest.

In April 2008, the Sellers "called for settlement to occur" the next month. *U.S. Home Corp. v. Settlers Crossing, LLC*, 33 F. Supp. 3d 596, 609 (D. Md. 2014). Instead of

---

[1] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.
[2] The definition provided by the Purchase Agreement governs. The Development Contract specifies that "[a]ny capitalized terms not defined herein shall have the meaning ascribed to them in the [Purchase] Agreement." J.A. 14.

agreeing, U.S. Home filed a breach-of-contract lawsuit in Maryland federal court. *Id.* at 610. The Sellers, their lender, and Bevard Development counterclaimed. *Id.* at 611–12.

The Maryland litigation took years to resolve, during which time the Sellers lost their interest in the property to their lender. *Id.* at 612 & n.11. Finally, after a two-week bench trial in 2014, the Maryland federal district court found in favor of the Sellers' lender. *Id.* at 599, 629. The court remarked that "[t]he evidence demonstrated that, by at least October 1, 2007, [U.S. Home] viewed the . . . transaction as a financial albatross and actively sought to relieve itself of this burden" by "retain[ing] a team of high priced lawyers and consultants to search for an escape clause in the Purchase Agreement." *Id.* at 628 (citation and internal quotation marks omitted); *see also id.* at 629 (finding that U.S. Home had undertaken various tactics "to delay closing while it settled on a strategy to avoid its obligations" under the contracts—and that the maneuvers were "not made in good faith").

The Maryland district court concluded that U.S. Home "was required to [proceed to Settlement] on May 27, 2008" and that its failure to do so was "wrongful[]" within the meaning of a contract amendment entitling the Sellers to interest "from the Settlement Date [of May 27, 2008] until [U.S. Home] proceeds to Settlement" if U.S. Home "wrongfully fail[ed] to make Settlement hereunder for any reason." J.A. 329, 427, 444; *see* J.A. 447. The court entered judgment in favor of the Sellers' lender for the purchase price and development fee plus interest from May 27, 2008 until Settlement, which the court ordered to take place within 30 days.

This Court affirmed. *U.S. Home Corp. v. Settlers Crossing, L.L.C.*, 685 F. App'x 173, 174 (4th Cir. 2017) (per curiam). Shortly thereafter, on April 21, 2017, U.S. Home paid the purchase price plus interest dating back to 2008.

With the sale at last concluded, Parkway sought the Reimbursement (which, as noted above, was a sum of approximately $2.25 million to be paid "at the time of Settlement under the [Purchase] Agreement" as compensation for Parkway's acquisition of certain properties). J.A. 11. When U.S. Home did not pay, Parkway commenced this action in the Eastern District of Virginia, alleging breach of the Development Contract. U.S. Home responded that Parkway's 2017 lawsuit was untimely because its claim accrued no later than 2009 and was subject to a three-year statute of limitations.

The district court held a bench trial in April 2018. Like the Maryland district court, the Virginia district court found U.S. Home's conduct throughout the parties' dealings to have been inappropriate, noting its "highly inequitable" behavior and agreeing with the Maryland district court that U.S. Home's failure to complete the purchase in 2008 was likely "simply a market decision." J.A. 240, 242. The court reprimanded U.S. Home for its litigation tactics, finding many of its arguments to be "pretextual," "bordering on unconscionable," "red herring," "immaterial," "absurd," or examples of "grasping at straws" or "swimming upstream." J.A. 55, 57, 62, 86, 213–16, 221, 241.

The district court concluded that Parkway's claim did not accrue until Settlement occurred in April 2017, and thus the lawsuit was timely. *Parkway 1046, LLC v. U.S. Home Corp.*, No. 2:17-cv-292, 2018 WL 1960774, at *5 (E.D. Va. Apr. 26, 2018). And the court

noted that even if Parkway's claim was untimely, given U.S. Home's behavior, the court "would exercise its equitable tolling power" to allow Parkway to pursue its claim. *Id.*

Next, the district court concluded that though the breach occurred in April 2017, "given the particular circumstances of this case," the court would award prejudgment interest to Parkway beginning on May 27, 2008. J.A. 256. The court reasoned that, in light of the Maryland district court's finding that U.S. Home should have settled with the Sellers on that date, Parkway also should have received payment at that time.

Finally, the district court awarded attorneys' fees to Parkway based on a provision in the Development Contract allotting attorneys' fees to the prevailing party in "any litigation aris[ing] between the parties regarding th[e] Contract." J.A. 13. Parkway and U.S. Home disputed whether Parkway was a "party" for purposes of that provision. The court concluded that, "[t]hough the language may reasonably be subject to either interpretation," Parkway's argument was more persuasive, particularly in light of "U.S. Home's inequitable conduct in this matter." J.A. 259.

U.S. Home timely appealed.

## II.

"Because this appeal invokes our diversity jurisdiction" to resolve a contract dispute, we apply state law. *Universal Concrete Prods. v. Turner Constr. Co.*, 595 F.3d 527, 529 (4th Cir. 2010). Both agreements—the Purchase Agreement and the Development Contract—are, by their terms, governed by the laws of Maryland.

"[I]n determining state law a federal court must look first and foremost to the law of the state's highest court"—here, the Court of Appeals of Maryland—and, if that court

6

"has not directly addressed the issue, a federal court 'must anticipate how it would rule.'" *Stahle v. CTS Corp.*, 817 F.3d 96, 100 (4th Cir. 2016) (first quoting *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998); and then quoting *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 528 (4th Cir. 2015)).

Maryland applies "the law of objective interpretation of contracts." *Weichert Co. of Md. v. Faust*, 19 A.3d 393, 404 (Md. 2011). This means courts "will give effect to the plain meaning of an unambiguous term, and will evaluate a specific provision in light of the language of the entire contract." *Id.* We "must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Id.* (quoting *Myers v. Kayhoe*, 892 A.2d 520, 526 (Md. 2006)). And "absent 'fraud, duress, mistake, or some countervailing public policy, courts should enforce the terms of unambiguous written contracts without regard to the consequences of that enforcement.'" *Id.* (quoting *Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999)). Put differently, "it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris*, 727 A.2d at 368 (quoting *Canaras v. Lift Truck Servs., Inc.*, 322 A.2d 866, 873 (Md. 1974)).

The issues before us on appeal are, first, whether the statute of limitations precludes Parkway's claim; and, if not, whether (and to what extent) Parkway may receive prejudgment interest and attorneys' fees. We consider each question in turn.

7

III.

U.S. Home's principal argument is that Parkway's claim accrued in 2008 or 2009, and therefore its lawsuit was untimely. We agree with the district court that Parkway's claim accrued in 2017, rendering its suit timely.

"We review the district court's statute-of-limitations decision de novo." *Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co.*, 886 F.3d 346, 359 (4th Cir.), *as amended* (Mar. 28, 2018). In Maryland, an action for breach of contract must "be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see Kumar v. Dhanda*, 43 A.3d 1029, 1033–34 (Md. 2012).

Although the length of the limitations period is provided by state law, "federal law determines . . . when the cause of action 'accrues.'" *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006). "[A] cause of action accrues under a borrowed statute of limitations" when the plaintiff has actual or constructive knowledge of his or her claim. *Id.* For a "claim" to exist for purposes of accrual, "all of [the] claim's elements [must] have occurred." *Mikels v. City of Durham*, 183 F.3d 323, 329 n.3 (4th Cir. 1999). In a Maryland breach of contract case, those elements are "contractual obligation, breach, and damages." *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011), *aff'd*, 43 A.3d 1029.

The plain language of the contract supports the district court's finding that there was no breach—and thus Parkway's claim did not accrue—until 2017. We first review the contractual language before turning to U.S. Home's arguments against this straightforward interpretation.

8

A.

The Development Contract provides that the "Reimbursement shall be paid" by U.S. Home to Parkway "at the time of Settlement under the [Purchase] Agreement." J.A. 11. The Purchase Agreement defines "Settlement" as "[t]he consummation of the purchase and sale hereunder." J.A. 279. Thus, the Development Contract required U.S. Home to pay Parkway the Reimbursement "at the time of" the "consummation of the purchase and sale," which occurred on April 21, 2017. J.A. 11, 279. There was no contractual obligation, and no breach, until that time.

Put in "legalese" terms, finalizing the sale was a condition precedent to U.S. Home's obligation to pay Parkway. "A condition precedent has been defined as 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'" *Chirichella v. Erwin*, 310 A.2d 555, 557 (Md. 1973) (quoting 17 Am. Jur. 2d *Contracts* § 320 (1964)). And a defendant "cannot fail to perform the condition precedent and [then] successfully interpose the defense of limitations because the Statute of Limitations would not commence to run until the condition precedent had been satisfied." *Garner v. Garner*, 358 A.2d 583, 589 (Md. Ct. Spec. App. 1976).

This interpretation is "what a reasonable person in the position of the parties would have meant at the time [the contract] was effectuated." *Weichert*, 19 A.3d at 404 (quoting *Myers*, 892 A.2d at 526). When the contracts were signed, "the time of Settlement" could not have meant a specific calendar date, because the Purchase Agreement provided alternative potential dates and the Development Contract planned for the possibility that Settlement might "not occur." J.A. 8. Specifically, the Development Contract contemplated

9

that "[i]f the [Purchase] Agreement terminates prior to Settlement . . . , then th[e] [Development] Contract shall also automatically terminate"—including the provision requiring payment of the Reimbursement to Parkway. J.A. 14. In other words, if the sale did not occur, the Reimbursement would not be paid; and before the Reimbursement would be owed, U.S. Home and the Sellers needed to proceed to Settlement.

We are confident that Maryland courts would come to the same conclusion. In *Prince George's Country Club, Inc. v. Edward R. Carr, Inc.*, the Court of Appeals of Maryland held that a broker was not entitled to a commission for an unconsummated sale where "the broker's right to a commission was subject to the condition precedent that the sale be consummated"—a fact supported, in part, by the contract's condition that the "commission was to be paid 'at the time of settlement of this contract.'" 202 A.2d 354, 360–61 (Md. 1964); *cf. Myers*, 892 A.2d at 529 (holding a real estate purchase contract "void for failure of a condition precedent" where a party's obligation to finalize the purchase was contingent on that party "entering into a contract for the sale of their then-current home" by a date certain).

The district court properly concluded that "Settlement under the [Purchase] Agreement occurred on April 21, 2017," the "clear language of the Development Contract" required payment at the time Settlement actually occurred, and therefore Parkway's "cause of action accrued on April 21, 2017." J.A. 55, 57.[3]

---

[3] Because we agree with the district court's conclusion that Parkway's cause of action accrued in April 2017, we do not reach U.S. Home's objections to the court's alternative justification based on equitable tolling.

B.

U.S. Home raises a litany of arguments to resist this conclusion, but to no avail. Each argument boils down to one central theme: that Parkway's cause of action accrued when U.S. Home *should have* proceeded to Settlement, and thus Parkway's claim is untimely. None of U.S. Home's arguments account for the fatal flaw in this logic—that the plain language of the contract provides that there could be no breach as to Parkway until the "consummation of the purchase and sale," which occurred in 2017. J.A. 279.

In part, U.S. Home's arguments are self-defeating. U.S. Home argues that the breach occurred on May 27, 2008, or no later than March 30, 2009. Yet the inability of U.S. Home to point to a specific date on which Parkway's claim supposedly accrued highlights a key problem with its position: the contracts did not provide for a specific, unalterable date for Settlement (and thus for payment of the Reimbursement). Rather, the contracts had flexible provisions, including those contemplating a situation in which Settlement *never* occurred—in which case Reimbursement would never be owed.[4]

In U.S. Home's view, the possible outcomes contemplated by the contracts are irrelevant in light of the Maryland district court's conclusion that U.S. Home *should have* proceeded to Settlement on May 27, 2008. That is, because U.S. Home's breach of contract

---

[4] U.S. Home argues for the first time in a footnote in its Reply Brief that this renders the contract illusory. U.S. Home waived this argument both "by raising it for the first time in its reply brief," *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 602 n.13 (4th Cir. 2013) (citing *McBurney v. Young*, 667 F.3d 454, 470 (4th Cir. 2012), *aff'd*, 569 U.S. 221 (2013)), and by taking only a "passing shot at the issue" in a footnote, *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 919 (4th Cir. 2015)). We decline to consider it.

in failing to proceed to Settlement has been reduced to a specific date, that date governs the Reimbursement provision as well. Thus, the thinking goes, Parkway should have sued back in 2008 or 2009—or counterclaimed alongside the Sellers and Bevard Development in the Maryland litigation (though U.S. Home has not suggested that Parkway was required to raise a compulsory counterclaim). *See* J.A. 198 (U.S. Home agreeing that Parkway did not "ha[ve] to make a mandatory counterclaim"). Along the same lines, U.S. Home argues that third-party beneficiaries must abide by the statute of limitations governing the principal contract, citing *Jones v. Hyatt Insurance Agency, Inc.*, 741 A.2d 1099 (Md. 1999), and that collateral estoppel prevents Parkway from relitigating the Settlement date here.

These arguments fail to grapple with the fundamentally different position of Parkway as compared to the Sellers, Bevard Development, and third-party beneficiaries in the typical case. The Sellers and Bevard Development sued to enforce their rights as parties to the principal contracts.

Similarly, the third-party beneficiaries in *Jones* were held to the limitations period applicable to the principal contract because they were suing to enforce that contract. *Id.* at 1103. The Court of Appeals of Maryland reasoned that a third-party beneficiary does not have *greater* rights to enforce the principal contract than do the original parties, so a third-party beneficiary "takes subject to the same defenses against the enforcement of *the contract*, as such, as exist between the original promisor and promisee." *Id.* (emphasis added) (quoting *Shillman v. Hobstetter*, 241 A.2d 570, 577 (Md. 1968)); *see also, e.g.*, *Bragunier Masonry Contractors, Inc. v. Catholic Univ. of Am.*, 796 A.2d 744, 756, 758 (Md. 2002) (holding that the petitioner's rights to collect funds owed by the respondent to

the petitioner's judgment debtor could not "exceed those of" the debtor, since the "[p]etitioner stood in the shoes of its debtor," and thus the petitioner was subject to the same statute of limitations as the debtor would have been).

But Parkway's suit is not based on the principal contracts, which concerned if and when Settlement would occur. Parkway does not attempt to "stand in the shoes" of the Sellers or Bevard Development. Rather, Parkway's claim is grounded in the limited language benefitting itself, under which it did not have a claim until the sale was "consummat[ed]." J.A. 279; *see Prince George's Country Club*, 202 A.2d at 360–61.

For the same reason, collateral estoppel is inapplicable. The issue in the Maryland case was whether U.S. Home wrongfully failed to proceed to Settlement with the Sellers in 2008. The question in the instant litigation is when the "consummation of the purchase and sale" took place, triggering payment of the Reimbursement to Parkway. J.A. 279. The issues in the two cases are not "identical," as required to invoke collateral estoppel. *Garrity v. Md. State Bd. of Plumbing*, 135 A.3d 452, 459 (Md. 2016).

In another maneuver to suggest that Parkway *could have* sued in 2008 or 2009 and thus that its present claim is untimely, U.S. Home invokes Maryland's prevention doctrine.[5] Under that doctrine, "if one party to a contract 'hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused.' In other words, the prevention doctrine applies when one party prevents another party from

---

[5] U.S. Home may have waived this argument by not raising it before the district court. *See Pornomo v. United States*, 814 F.3d 681, 686 (4th Cir. 2016). In any event, it is without merit.

performing under the contract." *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 268 (Md. 2018) (citation omitted) (quoting 13 Richard A. Lord, *Williston on Contracts* § 39:3 (4th ed. 2013)). U.S. Home's theory appears to be that Parkway could have sued long ago and invoked the prevention doctrine to show that U.S. Home's wrongful conduct was preventing a condition precedent (Settlement) from occurring.

But the prevention doctrine is a mechanism to excuse the nonperformance of one party when the other fails to perform. Here, there is no dispute that Parkway has performed. U.S. Home "cannot use the prevention doctrine to justify its own breach." *Id.* at 268.

As a final variation on the same theme, U.S. Home invokes a Maryland appellate decision involving the formation of a partnership, *Garner v. Garner*—even though, as noted, *Garner* held that a defendant could not "fail to perform the condition precedent" and then raise a statute-of-limitations defense (which is precisely what U.S. Home seeks to do here). 358 A.2d at 589. Nevertheless, U.S. Home argues that *Garner supports* its position because the *Garner* court held that the limitations period had not commenced when "it had not yet become clear to [the plaintiff] that no partnership would be formed." *Id.* According to U.S. Home, this means that the statute of limitations starts to run once a promisee becomes aware that the promisor has prevented or failed to perform a condition precedent.

We do not agree with U.S. Home's interpretation of *Garner*.[6] But even if we did, such a holding would be inapposite. Parkway was not the promisee to U.S. Home's

---

[6] A key issue in *Garner* was the existence (or not) of a partnership. *Garner* held that a partnership "cannot exist against the consent and intention of the parties, and their intention must be gleaned from proof in the case." 358 A.2d at 588. Where the *intention* of the parties

obligation to proceed to Settlement. Rather, its interest was limited to receiving the Reimbursement *if* Settlement occurred. Until the Maryland litigation resolved, it was not clear that U.S. Home was required to proceed to Settlement, and so until that date, Parkway could not have been aware that the condition precedent would not be satisfied.

In sum, we agree with the district court's straightforward reading of the contract language: Parkway was owed the Reimbursement at the time of Settlement, which occurred in April 2017. It filed suit two months later. Its claim was timely.

IV.

U.S. Home next challenges the district court's award of prejudgment interest to Parkway accruing from May 27, 2008. We conclude that Maryland law requires that Parkway receive prejudgment interest, but only from April 21, 2017.

We review a district court's rulings on questions of damages, including prejudgment interest, for abuse of discretion. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 299 (4th Cir. 2009). The court "abuses its discretion only if its conclusions are based on mistaken legal principles or clearly erroneous factual findings." *Id.* (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001)).

---

to form a partnership was at issue—and the condition precedent was that the parties "would work together for a while before finalizing the partnership," *id.* at 585—it is logical that the plaintiff's awareness of the defendant's intent *not* to enter a partnership would be required before the statute of limitations would begin to run. *See, e.g. MAS Assocs. v. Korotki*, 214 A.3d 1076, 1087 (Md. 2019) (citing *Garner* for the proposition that the intention of the parties is essential to the formation of a partnership). There is nothing in *Garner* to suggest that this knowledge requirement is more broadly applicable. Nor has any court cited *Garner* for such a proposition.

State law "governs the award of prejudgment interest in a diversity case." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). In Maryland, there are "three basic rules governing the allowance of pre-judgment interest." *Harford Cty. v. Saks Fifth Ave. Distribution Co.*, 923 A.2d 1, 13 (Md. 2007) (quoting *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001)). They are as follows:

1. Prejudgment interest *must* be granted where "the obligation to pay and the amount due" were "certain, definite, and liquidated by a specific date prior to judgment." *Buxton*, 770 A.2d at 165 (quoting *First Va. Bank v. Settles*, 588 A.2d 803, 807 (Md. 1991)). Interest accrues from when "payment was due." *I. W. Berman Props. v. Porter Bros.*, 344 A.2d 65, 75–76 (Md. 1975) (quoting *Affiliated Distillers Brands Corp. v. R. W. L. Wine & Liquor Co.*, 132 A.2d 582, 586 (Md. 1957)).[7]

2. Prejudgment interest *may not* be granted "in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement." *Buxton*, 770 A.2d at 165.

3. Prejudgment interest *may* be granted, but is not required, in the remaining "broad category of contract cases." *Id.* In this catchall category, which is the default for contract cases, *Harford Cty.*, 923 A.2d at 13–14 (citing *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 777 (Md. 2004)), whether to order prejudgment interest "is within the discretion of the trier of fact," *Buxton*, 770 A.2d at 165.

Courts must determine whether a contract case falls under the first or third category based on their level of certainty as to the existence, amount, and due date of an obligation to pay.[8] The rationale is that, where such certainty exists, "the effect of the debtor's

---

[7] Maryland's rule in such cases is endorsed by the Restatement (Second) of Contracts. *See Crystal v. West & Callahan, Inc.*, 614 A.2d 560, 572–73 (Md. 1992) (citing Restatement (Second) of Contracts § 354(1) (Am. Law Inst. 1981)).

[8] *Compare Harford Cty.*, 923 A.2d at 14 (prejudgment interest mandatory because a specific amount was owed on a specific date), *and E. Park Ltd. P'ship v. Larkin*, 893 A.2d 1219, 1235 (Md. 2006) (prejudgment interest mandatory on portion of judgment that was

withholding payment [is] to deprive the creditor of the use of a fixed amount as of a known date," and mandatory prejudgment interest is meant to rectify the situation. *Buxton*, 770 A.2d at 165 (quoting *Settles*, 588 A.2d at 807). Where the impact of withholding payment is less certain, the trier of fact has discretion to award prejudgment interest as appropriate to the unique circumstances of the case. *E.g.*, *Crystal*, 614 A.2d at 573.

Here, "the obligation to pay and the amount due" were "certain, definite, and liquidated by a specific date prior to judgment." *Settles*, 588 A.2d at 807 (quoting *David Sloane, Inc. v. Stanley G. House & Assocs.*, 532 A.2d 694, 702 (Md. 1987)). So this case falls under the first category, and prejudgment interest is mandatory. The district court apparently agreed. *See* J.A. 255 & n.1 (finding Parkway to be "entitled" to prejudgment interest, and citing a case involving "a liquidated sum of money [owed] at a certain time").

But the district court erred as a matter of law in concluding, based on equitable principles, that Parkway was entitled to interest accruing from May 2008. In cases within the first category, prejudgment interest accrues from the date where "*the obligation to pay and the amount due*" were both "certain." *Settles*, 588 A.2d at 807 (emphasis added); *see Gordon v. Posner*, 790 A.2d 675, 698 (Md. Ct. Spec. App. 2002) ("[A] right to pre-judgment interest only exists when liability *and* damages are certain . . . .").

---

"'certain, definite, and liquidated' from the time the case was remanded by the Court of Appeals"), *with Ver Brycke*, 843 A.2d at 761–62, 777–78 (prejudgment interest discretionary in complex family dispute involving whether monetary gift was conditional or absolute), *Crystal*, 614 A.2d at 562, 573 (prejudgment interest discretionary in dispute between contractor and homeowner regarding work on home), *and I. W. Berman Props.*, 344 A.2d at 77 (prejudgment interest discretionary in construction contract dispute).

Here, as noted, the contract did not create any obligation for U.S. Home to pay Parkway the Reimbursement until the time of Settlement. However, as of the date of Settlement, the Reimbursement was a specific amount that was definitively owed. This case falls within the first, mandatory category, and Parkway is entitled to prejudgment interest as of right—but only from the date the Reimbursement came due, that is, the date of Settlement in 2017. We therefore vacate the district court's order and remand with directions to order prejudgment interest as of right accruing from April 21, 2017.

V.

Finally, U.S. Home contends that the district court erred when it awarded attorneys' fees to Parkway. Considering the plain language of the Development Contract, we agree.

The proper interpretation of a contract "is a question of law and subject to de novo review." *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 278 (4th Cir. 2018) (quoting *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank*, 929 A.2d 932, 951 (Md. 2007)). "Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers*, 892 A.2d at 532. There is no reason to suppose this general rule would not apply to a third-party beneficiary suing under the contract if the beneficiary was covered by the relevant contract provision.

However, "Maryland follows the common law 'American Rule,' which states that, generally, a prevailing party is not awarded attorney's fees 'unless . . . the parties to a contract have an agreement to that effect,'" or unless other exceptions not relevant here apply. *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 281 (Md. 2008)

(quoting *Thomas v. Gladstone*, 874 A.2d 434, 437 (Md. 2005)). Thus, "attorney's fees provisions must be strictly construed to avoid inferring duties that the parties did not intend to create." *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship*, 164 A.3d 978, 985 (Md. 2017) (internal quotation marks omitted).

The Development Contract provides that "[i]n the event that any litigation arises *between the parties* regarding this Contract, the substantially prevailing party shall be entitled to recover its reasonable attorneys fees . . . from the other party." J.A. 13 (emphasis added). Despite labeling itself a "third-party beneficiary" of the Development Contract, Parkway argues that it is entitled to attorneys' fees under the fee-shifting provision. J.A. 4.

The plain meaning of "party," when interpreting a contract, is a signatory. *See Signatory*, Black's Law Dictionary (11th ed. 2019) (defining "signatory" as "[a] person or entity that signs a document . . . and thereby becomes a party to an agreement"); *cf. Montana v. Wyoming*, 563 U.S. 368, 375 n.4 (2011) ("As with all contracts, we interpret the Compact according to the intent of the parties, here the signatory States."); *Dickerson v. Longoria*, 995 A.2d 721, 742 (Md. 2010) (noting that "a third-party beneficiary is not a party to the contract"). Thus, litigation "between the parties" naturally suggests litigation between the signatories—which does not include Parkway.

That understanding of the term "party" permeates the Development Contract. The contract is made "by and between" U.S. Home and Bevard Development. J.A. 7. Regarding any litigation involving escrow, "[t]he party (i.e., U.S. Home and Bevard Development, as applicable), which is the non-prevailing party," is to be held responsible for related costs.

19

J.A. 8. Required notices must be sent to Bevard Development and U.S. Home[9]—not Parkway—and "*[e]ither* party may at any time change its addresses . . . by written notice to *the other*." J.A. 13 (emphases added). The Development Contract concludes by stating that "*the parties* have executed this Contract"—followed by signature lines only for U.S. Home and Bevard Development. J.A. 15 (emphasis added).

An amendment to the Development Contract continues in the same vein. The amendment, which is made "by and between" U.S. Home and Bevard Development, notes that "the parties desire to amend the Contract" and that "the parties acknowledge and agree" to certain terms. J.A. 321, 325. The amendment states that it is executed by "the parties," again providing signature lines only for U.S. Home and Bevard Development. J.A. 327.

Further, the amendment binds Lennar Corporation, "the sole stockholder of U.S. Home," to some provisions—and explicitly addresses attorneys' fees in litigation between Lennar and Bevard Development. J.A. 325. Lennar is not described as a party; its signature acknowledges only the provisions relevant to it.

Significant textual evidence thus supports interpreting "party" to mean a signatory to the Development Contract and to the full text of the amendment (so, U.S. Home or Bevard Development), and not to include others like Lennar and Parkway. And where attorneys' fees were to be permitted for a non-party (like Lennar), the contract so specified.

---

[9] A copy of notices is also to be sent to the minority owner of Bevard Development.

Nevertheless, the district court found Parkway to be a "party" for purposes of fee-shifting. The court focused primarily on the "i.e." parenthetical in the escrow provisions: "[t]he party (i.e., U.S. Home and Bevard Development, as applicable)." J.A. 8.

Parkway claimed below that the parenthetical suggested that "where the parties to the Development Contract intended to limit the term 'party' to the signatories," they did so. J.A. 259. By contrast, U.S. Home argued that the parenthetical defined the term "party." The district court concluded that, "[t]hough the language may reasonably be subject to either interpretation," Parkway's interpretation was "more persuasive." J.A. 259.

We disagree. Because "i.e." means "that is," "a reasonable person in the position of the parties . . . at the time [the contract] was effectuated" would have understood the parenthetical to be serving a defining function. *Weichert*, 19 A.3d at 404 (quoting *Myers*, 892 A.2d at 526). And, more importantly, substantial other textual evidence in the Development Contract and related amendment supports the same conclusion.

The district court also noted that it was "inclined to find for [Parkway] due to U.S. Home's inequitable conduct." J.A. 259. But the default presumption under Maryland law is against fee-shifting, and the contract does not provide otherwise with regard to Parkway. Accordingly, we reverse the district court's order awarding attorneys' fees to Parkway.

VI.

We have no reason to doubt the conclusions of not one, but two district court judges who chided U.S. Home for its behavior in this and a related case. But our role is limited to enforcing the plain language of the contracts. In addition to providing certainty, this approach encourages parties to negotiate contracts carefully.

21

The plain language of the contracts supports the district court's conclusion that Parkway's lawsuit is timely. But we cannot agree that Parkway is entitled to attorneys' fees. And, in accordance with Maryland law, Parkway is entitled to prejudgment interest as a matter of right, but only dating from Settlement on April 21, 2017.

*AFFIRMED IN PART, REVERSED IN PART,*
*VACATED IN PART, AND REMANDED*
*WITH INSTRUCTIONS*